IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NEVA J. MASTERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-51-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Neva J. Masters requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 30, 1972, and was forty-one years old at the time of the most recent administrative hearing (Tr. 71, 234, 241). She has a high school education, and has worked as a school cook and cashier/checker (Tr. 73, 95). The claimant alleges she has been unable to work since April 27, 2009, due to back pain, neck pain, and depression (Tr. 301).

## Procedural History

On October 4, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 112-26). Her applications were denied. ALJ Osly Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 27, 2012 (Tr. 107-116). The Appeals Council vacated the ALJ's decision and remanded the case on June 13, 2013 (Tr. 122-24). ALJ Bernard Porter conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated May 28, 2014 (Tr. 19-35). The Appeals Council denied review, so the ALJ's May 28, 2014, written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except she must be permitted to alternate sitting and standing at least every thirty minutes; could frequently balance, stoop, and crouch; occasionally use foot controls, and climb ramps and stairs; but never crawl, or climb ladders and scaffolds (Tr. 24). Additionally, the claimant could not work at unprotected heights, around moving mechanical parts, or in environments with temperature extremes (Tr. 24). Lastly, the claimant was limited to simple tasks and simple work-related decisions with occasional interaction with supervisors and co-workers, no interaction with the general public, and time off tasks accommodated by normal work-day breaks (Tr. 24). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, small product assembler, electrical accessory assembler, and inspector/packer (Tr. 34).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the opinion of physician assistant Steven Petticrew, and (ii) by failing to properly analyze her credibility. The Court agrees with the claimant's first contention.

The ALJ found the claimant's lumbar disc disease, syncope, tremors, migraine headaches, obesity, cervical disc disease, anxiety disorder, and depressive disorder were severe impairments (Tr. 21). The relevant medical evidence reveals that in April 2009,

the claimant presented to physician assistant Shelby Lucas at Kiamichi Family Medical Center ("KFMC") with low back pain (Tr. 406). Ms. Lucas prescribed pain medication, stretches, and intermittent heat (Tr. 406). X-rays taken April 29, 2009, revealed no significant osseous abnormality (Tr. 388). Thereafter, various providers at KFMC, including physician assistant Steven Petticrew, managed the claimant's pain medications through November 2012 (Tr. 405-09, 474-75, 488-97, 569-78).

In connection with a subsequently filed worker's compensation claim, Dr. Richard Hastings examined the claimant on June 23, 2009, and again on November 2, 2010 (Tr. 427-39). An MRI of the claimant's lumbar spine dated June 23, 2009, revealed mild degenerative changes (Tr. 389-90). At both physical examinations, Dr. Hastings noted pain and reduced range of motion in the claimant's lumbar (Tr. 431, 436). In November 2010, Dr. Hastings opined that the claimant should undergo vocational rehabilitation for a more sedentary type of employment, and required the following permanent restrictions: (i) no lifting in excess of fifteen pounds; (ii) avoid repetitive bending, stooping, lifting, and climbing; and (iii) primarily sit down work activities with flexibility to stand to tolerance (Tr. 435-39).

Dr. William R. Gillock reviewed the claimant's records (including surveillance video dated August 2009), and examined the claimant on August 24, 2009 (Tr. 392-98). Dr. Gillock opined that there was no objective evidence of a permanent anatomical abnormality, and that the claimant did not require additional medical treatment, continuing medical maintenance, or vocational rehabilitation (Tr. 397).

On June 2, 2010, the claimant presented to Dr. John Marouk for a neurosurgical consultation (Tr. 401-03). Dr. Marouk noted a broad-based gait with a limp favoring her left leg, and tenderness in the claimant's lower lumbar region, sacroiliac joints, and left hip (Tr. 402). The claimant also had hip, thigh, and back pain with internal and external rotation of her hips, but full strength in her quadriceps, hamstrings, dorsi, and plantar flexors (Tr. 402). Dr. Marouk prescribed pain medication and physical therapy, and ordered an MRI of her hip, which was normal (Tr. 399, 402). At a follow-up visit on August 9, 2010, Dr. Marouk stated he did not find any anatomic causes for the claimant's pain and released her to work with a twenty-five pound lifting restriction for one week, and thereafter, released her to return to work full-time without restriction (Tr. 399). Dr. Marouk also released the claimant from his care, stating she did not require surgery or further medication for her back, and did not require any treatment for her hip (Tr. 399).

Steven Petticrew, a physician assistant at KFMC, completed a medical source statement ("MSS") on November 17, 2011, wherein he opined that the claimant could lift and/or carry less than ten pounds frequently and up to ten pounds occasionally, stand and/or walk less than two hours out of an eight-hour workday and continuously for less than ten minutes, sit less than six hours out of an eight-hour workday and continuously for two hours, and needed to lie down during the workday to manage pain or other symptoms (Tr. 500-01). Mr. Petticrew further found the claimant could push/pull twenty pounds up to thirty feet more than one or two times, but less than occasionally because of back pain (Tr. 501). Lastly, Mr. Petticrew opined that the claimant could occasionally balance, stoop, kneel, crouch, reach, handle, finger, and feel, but could never climb,

crawl, or work in an environment with vibrations (Tr. 501). As the basis for his opinions, Mr. Petticrew stated the claimant had low back pain, muscle spasms, essential tremors, degenerative disc disease in her lumbar, anxiety, headaches, and many mild herniated discs (Tr. 501).

In his written opinion, the ALJ gave substantial weight to Dr. Marouk's opinion because he was a treating specialist (Tr. 28). The ALJ gave Dr. Hastings' opinion neither substantial nor controlling weight, concluding his limitations were generally consistent with the claimant's RFC (Tr. 31). As to Dr. Hastings' opinion that the claimant should learn a more sedentary type of work, the ALJ determined it was not supported by the objective evidence, and was in conflict with his own physical examination findings as well as the opinions of Drs. Framjee and Marouk (Tr. 31).[2] The ALJ gave little weight to Mr. Petticrew's MSS because he was not a physician, and his report was inconsistent with Dr. Marouk's opinion and the June 2009 MRI (Tr. 32).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Mr. Petticrew herein. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that

---

[2] Dr. Framjee's treatment notes are not contained in the record, however, Dr. Hastings referenced his findings in his treatment notes (Tr. 435).

the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 404.1527(c), 416.927(c). Although the ALJ rejected Mr. Petticrew's opinion using the second factor of consistency, he failed to mention, much less apply the remaining factors (Tr. 31-32). This was important to do where, as here, Mr. Petticrew: (i) treated the claimant's chronic back pain and muscle spasms for more than a year, (ii) had the benefit of the entire treatment record from KFMC, and (iii) ordered a December 2012 lumbar MRI that the ALJ did not mention anywhere in his opinion (Tr. 405-09, 474-75, 488-97, 569-80). Furthermore, Dr. Marouk only treated the claimant twice, and his opinion is contained within the resultant treatment notes that predate Mr. Petticrew's MSS by more than a year (Tr. 399-403, 500-01). This was error. *See, e. g., Anderson v. Astrue,* 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. *See also Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects.") [citation omitted].

Because the ALJ failed to properly consider the "other source" evidence provided by Mr. Petticrew, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**